IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| PAUL ARGEN, and SURENDER MALHAN )<br>)<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>DONALD KESSLER, and GURBIR )<br>S. GREWAL, in his official capacity )<br>as Attorney General of New Jersey )<br>)<br>Defendants. ) | No. _____ |

**VERFIED COMPLAINT**

<u>Jurisdiction</u>

1. This Court has jurisdiction over this matter under 28 U.S.C. §1331. Plaintiff maintains this action under 42 U.S.C. § 1983, and the Declaratory Judgment Act, 28 U.S.C. § 2201. Defendants are depriving Plaintiff of liberty (free speech and freedom of the press) under color of law by threatening to enforce a "gag order" prohibiting plaintiff from discussing ongoing litigation of a civil rights lawsuits pending in federal and state courts.

<u>Summary</u>

2. This is an action pursuant to 42 U.S.C. § 1983 and the Declaratory Judgment Act, 28 U.S.C. § 2201, to enjoin enforcement of a "gag order" imposed by the Courts of the State of New Jersey, that, if allowed to continue in effect, would impose an intolerable burden on speech and on the press, in violation of the First and Fourteenth Amendments and of the United States Constitution.

3. Plaintiff seeks prospective declaratory and injunctive relief against enforcement of a gag orders issued by two Superior Court Judges of the State of New Jersey, Ordering a father not to discuss any matter involving custody with any

member of the press, as well as enjoying the father from posting anything on social media related to his children or custody.  A copy of the Gag Order is attached hereto as Exhibit 1.  The Gag Order was entered without a plenary hearing or any weighing of competing interests.

## Parties

4.     Plaintiff Paul Argen is an adult residing in Morris County, NJ.  He is a reporter who has been covering family court abuses for years. He has Executive Produced numerous TV News program series, and hundreds of digital TV segments that report on Family Health, Business Law & civil rights along with investigative reporting and surveillance for government and industry.

5.     Donald Kessler is a judicial officer of the State of New Jersey, Essex County Superior Court, Family Division.  He is sued in his official and individual capacities under the doctrine of *Ex parte Young* to halt the ongoing violation of fundamental constitutional rights. *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645-46 (2002); *Balgowan v. State of N.J.*, 115 F.3d 214, 219 (3d Cir. 1997).

6.     Attorney General Gurbir Grewal is the official charged with defending the constitutionality of state action and state laws; he is sued in his official capacity to challenge State action

## Statement of Facts

### Facts Relevant to Sivilli/Kessler Gag Order

7.     On February 24, 2011, Alina Myronova, the putative wife of Surender Malhan,  filed an Order to Show Cause in Hudson County Family Court asking that full physical and legal custody of the children be given to her and all custody striped from her husband Surender Malhan.

8.     Malhan had less than two hours' notice of a legal proceeding and had no time to seek legal advice or obtain counsel.

9.     Malhan, appearing before the family part judge, contested all of Myronova's

allegations about his alleged unfitness as a parent.  Malhan stated that Myronova was lying.  Malhan was not permitted to cross examine Myronova.

10. Malhan told the court that he wished to present evidence to refute the allegations made by Myronova, specifically he stated that he had audio recordings, photographs and videos which could document his extensive parenting and would show that Myronova was lying.  The court did not permit Malhan to present any evidence at this proceeding.

11. On February 24, 2011, the Court stripped Malhan of physical and legal custody ordering Myronova to assume full legal and physical custody of the two children.

12. Initially for a month Malhan was permitted only one hour, twice a week of supervised visitation at Hudson County Courthouse and then every day 2 hours unsupervised and then 3 hours unsupervised for next 15 months.

13. Myronova kept sole legal and physical custody of the two children for sixteen months, until June 2012 when she agreed to permit joint custody.  During this sixteen month period Malhan was never granted a plenary hearing or permitted to contest any of the allegations that led to the 16-month suspension of his parenting time.

14. In February 2014 Malhan and five other named plaintiffs filed a class action law suit against the State of New Jersey alleging widespread violation of the due process rights of parents in New Jersey, in particular that the State deprives parents of custody of their children without a plenary hearing when the state gives custody to another parent.  Edelglass, et al, v. New Jersey, et al, No. 3:14-cv-00760-FLW-DEA.

15. On or about February 18, 2014, a television news reporter for channel nine (WWOR), interviewed Malhan and two other plaintiffs in the instant suit about their experience in family court and their complaints about constitutional deprivations.

16. On April 4, 2014, the Defendants Judge Nancy Sivilli and Essex County Superior Court, Family Part issued a "gag order" retraining Malhan from discussing any issues surrounding the divorce or custody proceedings with any employee of any media anywhere in the universe and further restrained Malhan for posting anything on the internet discussing these issues.

17. The Gag Order also required Malhan to remove specific parts of a posting on his website that criticized the Superior Court and the presiding judge by name.

18. The Court did not hold a plenary hearing and made no findings whatsoever specific to Malhan or his children. The Court "found" generally that publicity about divorce proceedings was not in the best interests of children.

19. On May 1, 2014 the Judge Sivilli and Essex County Superior Court issued an Amended Order, slightly modifying the April 4 Gag Order. A Copy of this Order is attached as <u>Exhibit 2</u> to this Complaint.

20. On or about May 6, 2014, Malhan brought suit in federal court seeking to have the Gag Order declared unconstitutional and also filed an application for a TRO to enjoin enforcement of the gag order. In a written Order per Judge Wolfson, issued May 8, 2014, the Court ruled that "the state court judge did not conduct any meaningful weighing of Plaintiff's First Amendment freedom of speech rights . . . important First Amendment issues are implicated by the broad sweeping language of the Gag Order . . . nevertheless, Plaintiffs instant motion falls squarely with the Rooker-Feldman doctrine . . . ."

21. Malhan's application for interlocutory review of the Gag Order by the Appellate Division was denied.

22. In June 2014, Bergen Dispatch Reporter Paul Nichols brought suit in New Jersey Federal District Court to enjoin enforcement of the Gag Order, arguing that the Gag Order was preventing him from interviewing Malhan and covering the case.

23. Judge Sivilli made a motion to Dismiss, which was denied by the Court per

Judge Martini in December 2014.

24. Specifically the District Court ruled (inter alia):

> The *Dow Jones & Co. Court*, which found that a similar gag order was not a prior restraint on the press, upheld the order only after concluding that it was justified. First, the court noted that the judge who issued the gag order examined specific circumstances unique to the case. For example, the judge found that press leaks attributable to the government revealed the identities and testimony of grand jury witnesses, which constituted a "shameful abuse of grand jury secrecy" that jeopardized the Sixth Amendment rights of the criminal defendants. Moreover, the judge issuing the gag order "properly recognized [that] before entering an injunction against speech he had to explore whether other available remedies would effectively mitigate the prejudicial publicity." Dow Jones & Co., 842 F.2d at 609, 612 (citing Nebraska Press, 427 U.S. at 562).
>
> According to the SAC [Second Amended Complaint], Judge Sivilli did not engage in this type of analysis before issuing the Gag Order. The Gag Order – which is attached to the SAC – broadly prohibits Malhan from discussing any aspect of his divorce, including his experiences during child custody proceedings. (SAC at ¶ 17). The SAC alleges that despite its far-reaching scope, the Gag Order was issued "in a summary proceeding without any evidentiary hearing or any weighing of competing interests…." (SAC at ¶ 26). The SAC further alleges that Judge Sivilli made no specific findings regarding Mr. Malhan and his children with respect to the need for a gag order, and instead issued the Order "based on a generalized finding that publicity in family court is not in the best interests of children." (SAC at ¶¶ 18, 26). The Court therefore rejects Defendants' argument that Nichols has failed to adequately allege a First Amendment violation.

Nichols v. Sivilli, CIV. 2:14-3821 WJM, 2014 WL 7332020, at *6 (D.N.J. Dec. 19, 2014)

25. A few weeks after the Judge Martini decision, on January 25, 2015 Judge Sivilli scheduled "an evidentiary hearing to weigh the competing interests of the best interests of the parties' children and defendant's First Amendment rights."

26. However, three days later Judge Sivilli cancelled the plenary hearing, and recused herself from further participation. For several months no judge was

actively assigned to the case; and during this interregnum period the Gag Order was never vacated.

27. Judge Sivilli was eventually succeeded by Judge Donald Kessler.

28. On May 29, 2015 Judge Kessler scheduled a plenary hearing to permit Myronova to present evidence to support the issuance of a Gag Order, which was part of what the federal District Court, per Judge Martini had stated was required before issuance of a Gag Order.

29. The May 29, 2015 Kessler Order stated:

> 1. This matter shall be scheduled for a hearing on June 18, 2015 at 9:00a.m. to address the pending issue of the gag order and hold a plenary hearing on any aspect of the pending issue, if necessary.
> 2. Defendant shall submit his position including the legal basis therefore and relevant documents on or before June 3, 2015.
> 3. Plaintiff shall submit her reply to the legal position and any relevant documents on or before June 10, 2015.
> 4. The parties shall, by June 10, 2015 provide a list of any witnesses whom testimony they claim is required at the hearing with a summary of the witness testimony.

30. On June 18, 2015, however, Myronova failed to present any witnesses or any evidence.

31. Judge Kessler stated on the record:

> The change that we have since Judge Sivilli entered her order is that we have the orders -- the -- the ruling by Judge Martini, and the essence of Judge Martini's decision, as I understand it, is that the court needs to hold a plenary hearing before it can have an enforceable gag order. So that -- and that was what I tried to join for today.

32. Judge Kessler then stated that he was inclined to give Myronova yet more time to try to justify the Gag Order, stating: "So now I am at a point where I have to schedule a further plenary hearing."

33. Malhan asked that the Gag Order be vacated entirely as Myronvoa had failed to present any evidence for a Gag Order.

34. Judge Kessler stated that he was not going to vacate the order entirely but he

going to issue a more narrow gag order, even without a plenary hearing:

> Just so everyone knows that at this point time, I am going to limit the gag order, and what I'm going to limit it to because I haven't seen – I haven't presented with anything else that tells me I shouldn't limit it, and I agree that it's plaintiff's burden of proof, but I still have to mindful that if I have a statutory obligation as a judge, I have to -- you know -- I've got to respect that statutory obligation. So that's really -- and I recognize that there -- I can deviate if there's a proper record, but there would have to be a proper record. So my inclination is to limit the gag order only to disseminating information or discussing the -- the substance of the custody issues.

35.    Judge Kessler then signed a new Gag Order providing:

> It is on this 18th day of June 2015 hereby ORDERED:
>
> 1. All parties are hereby restrained and enjoined from speaking with, appearing for an interview, or otherwise discussing any custody information to any reporters, journalists, newscasters or other news media employees or from posting any blogs or information not previously posted or disseminated relating to the children or any custody issue in this case pending a further hearing. Judge Sivilli's Gag Orders dated April 4, 2014 and May 1, 2014 are hereby vacated except as set forth above.

36.    A partially redacted copy of the court Order is attached hereto as Exhibit 1.

37.    The Court Order did not further specify the meaning of "custody information" Malhan was not to discuss with news media.

38.    As can be seen from the above language, Malhan was also broadly restrained from posting any blogs or information on-line "relating to the children or any custody issue in this case."

39.    The Court, per Judge Kessler, did not offer any reasons why it was enjoining Malhan "from posting any blogs or information not previously posted or disseminated relating to the children or any custody issue in this case" as this was not even mentioned by the Court on the record June 18—in other words, Judge Kessler did NOT explore whether other available remedies would effectively mitigate the prejudicial publicity, or even discuss what pre-trial publicity was of

concern, or why.

40. After Judge Kessler replaced Judge Sivilli and issued the new gag order, Reporter Paul Nichols sought leave to amend his complaint to add Judge Kessler as the new defendant in place of Judge Sivilli.

41. The New Jersey Attorney General's Office represented all of the judges and opposed the motion.

42. Although it took the Court some time to issue an ruling, in June 2016 the federal court per Judge Martini issued a decision granting Nichols motion to add Judge Kessler as a party

43. Of particular interest the federal district court decision stated:

> While Malhan has indicated that he does not intend to discuss the "minutia" of his custody issues with the press, he has never expressed an outright unwillingness to offer public comments on broader custody-related topics, including his distrust of the family court system. To the contrary, the series of gag orders that have been the subject of this litigation were entered in direct response to Malhan discussing those issues with members of the press. This is pertinent because Judge Kessler's gag order does not prohibit discussions that concern "the minutia" of custody issues; instead, it plainly prohibits *any* discussions with the media that concern custody, period. Moreover, while Malhan may not currently plan to mount his own challenge to the new gag order, it does not necessarily follow that he would continue to refrain from speaking with the press if the gag order were vacated.

Nichols v. Sivilli, 2:14-3821 (WJM), 2016 WL 3388296, at *4 (D.N.J. June 14, 2016) (emphasis original).

44. A few days after the above decision was handed down, Paul Nichols died suddenly.

45. None of Nichols's business associates or heirs was interested in pursuing the litigation in Nichols's place so the Amended Complaint was never filed and the case was closed a few months later.

**Malhan "Temporarily" Loses Custody in 2017 without Due Process**

46. Following the death of Paul Nichols the Judge Kessler Gag Order lay dormant for some time.

47. On September 11, 2017 Myronova filed an 18-page Order to show cause, and the only "evidence" alleged or attached was a statement by Myronova. Myronova did not claim to have witnessed any of the events but claimed to repeat a number of statements allegedly made to her by a couple of people repeating what the children supposedly told them that Malhan had said at an unspecified time and place. The main allegation was that Malhan told the children he was going to commit suicide by eating a dirty napkin off the floor.

48. At a proceeding September 12, 2017 Presiding Judge Katz suspended Malhan's custody but stated he was acting on secret ex parte communication Judge Katz had received from the New Jersey Division of Child Protection and Permanency (DCPP).

49. Judge Katz stated that he was not going to tell Malhan what the allegations were. But promised him to keep the separation for Malhan's children short.

50. Judge Katz acknowledged that it was difficult for Malhan not to even be informed of the allegation against him: "difficult as it is for the <u>defendant because he</u> has denied it, <u>doesn't understand the basis of</u> [the court's actions].

51. Judge Katz also stated: "<u>I do have information, and it's not that I've done an investigation *ex parte* before the lawyers came in. We have -- every vicinage has a DCPP liaison. Our staff reached out to the liaison.</u>"

52. The Court did not set a return date for the OTSC but the order merely stated: "Parties to appear 10/6/17 at 9:30." 9/12 Order.

53. At the October 6, 2017 proceeding, Malhan again moved for the Court to dismiss all restrictions on Malhan and restore his custody, again noting that no evidence had ever been admitted that permitted the Court to suspend Malhan's

custody.

54. In response the Court stated that Malhan did not know what the allegations were and the Court was not going to tell him:

> THE COURT: But you know the Division interviewed the children. You do know that?
> MR. CLARK: Right, but that's not -- that's not corroboration of anything.
> THE COURT: **Well, you don't** --
> MR. CLARK: Anybody could talk to anybody else.
> THE COURT: -- **know, and I'm not about to disclose what the children may or may not have said**, but -- but based on that, the Division has requested a psychological evaluation.

Emphasis added.

55. The Court per Judge Katz continued to rely on this secret evidence to deny Malhan any custody.

56. Judge Katz also refused to Order any parenting time, even supervised visitation.

57. On November 21, 2017 DCPP provided a copy of its report to the Family Court the report concluded that the allegations against Malhan were unfounded.

58. This report has never been entered into evidence and has never been provided to Malhan or his counsel.

59. On November 22, 2017 Malhan was informed by DCPP that they had concluded their investigation.

60. DCPP Also told Mr. Malhan that they had provided a copy of the report to the Court.

61. Malhan's expert, Dr. Lidia Abrams has conducted a full evaluation of Malhan and concluded that he posed absolutely no danger to the children and moreover that the separation of the children from their father is contrary to the best interests of the children.

62. Malhan provided copies this Abrams Report to the Court.

63. On November 29, 2017, after the Court had the DCPP Report for more than

a week (November 23 was Thanksgiving), counsel for Malhan emailed the family Court judicial clerk reminding the Court that Judge Katz has stated he intended to have the parties come in the day after the DCPP report was received and pointing out that Malhan had been told by DCPP that the report had been sent to the court prior to Thanksgiving.

64. The Court then scheduled a proceeding the next day November 30, 2017—at this point Mr. Malhan had been denied custody for twelve weeks and during those twelve weeks he had been permitted to see his children for a total of about ten hours in a tightly controlled supervised setting.

65. At the November 30 proceeding the family court announced that DCPP had conclude that the allegations were unfounded and had closed the case.

66. The Court did not submit this report into evidence, and Malhan objected it would not be admissible anyway without at least a witness.

67. Malhan then asked the Court to immediately restore Malhan's custody rights and go back to the four overnights per week Malhan had exercised from August 2012 until September 2017.

68. The family court per Judge Katz ordered a gradual restoration - in that Malhan would first have two weekends of unsupervised visitation during the day (Saturday and Sunday) after which he would have three overnights a week and Judge promised that after another week or two he would restore it back fully to four overnights a week as it was before.

69.  Specifically the Court order stated:

> IT IS on this 301h day of November, 2017;
> ORDERED:
> 1) That the restraints on Defendant's parenting time have been lifted pursuant to the DPC&P report received by the Court on November 21, 2017 for the reasons stated on the record.
> 2) That Defendant shall have unsupervised day-time visits with the children on Saturdays and Sundays from 8:00AM until 7:00PM beginning December 2, 2017 and continuing for two consecutive weekends, so as to transition the children back into parenting time

with Defendant, for the reasons stated on the record.

70. Although Malhan eventually "prevailed" the State and the Family Court deprived Malhan of custody entirely for twelve weeks based on secret "evidence" not part of the record and much of which Malhan remains unaware.

71. But Malhan's long-estranged wife refused to cooperate with the November 30 Order and refused to turn over the children to Malhan.

72. On December 5, 2017 Malhan filed an Order to Show Cause asking the Court to at least enforce the November 30 Order.

73. On or about December 14, 2017 Judge Katz stepped aside as the judge immediately presiding over that case (but he is the presiding family judge in Essex).

74. On December 21, Judge Kessler heard Malhan's OTSC, but instead of enforcing the November 30 Order, Judge Kessler suspended all of Malhan's parenting time and all overnight custody.

75. Judge Kessler allowed Malhan to have supervised parenting time, however he would need to pay a supervisor (Peaceful Healing) $95 per hour to spend any time with his children plus other expenses. As of 1/23/18, astonishingly, Peaceful Healing has already charged Malhan $2505.00 where as he has been able to see his children for only 2.5 hours.

76. Notably at the December 21 hearing Judge Kessler explained that he has read a DCPP Report not in evidence, but that he had not read any of Dr. Abrams's reports submitted by Malhan in support of his Order to Show Cause.

77. Disappointed and appalled by his treatment at the hands of Judge Kessler and Judge Katz, Malhan is ready and willing to talk to members of the press about the court system and how it is destroying his family.

78. Paul Argen desires to pool his news services to his TV network resources and cover this situation with Malhan more fully which shall include an interview of Malhan (and any other willing party in the litigation) and post the interview, but as

Judge Martini has already ruled: "Judge Kessler's gag order does not prohibit discussions that concern 'the minutia' of custody issues; instead, it plainly prohibits any discussions with the media that concern custody, period."

## COUNT ONE
## DECLARATORY AND INJUNCTIVE RELIEF

79. Upon information and belief, imposition of gag orders in family matters (sometimes based on alleged "best interest" sometimes not) is common in New Jersey. Borra v. Borra, 333 N.J. Super. 607, 614, 756 A.2d 647, 651 (Ch. Div. 2000) (ruling that "when presented with a choice between parent's rights and children's rights, children's welfare and best interests will always be paramount"); Kelly Kanavy, The State and the "psycho Ex-Wife": Parents' Rights, Children's Interests, and the First Amendment, 161 U. Pa. L. Rev. 1081, 1083-84 (2013) ("These types of [gag] orders, however, are actually quite common in family court proceedings.")

80. With respect to Malhan's case Judge Kessler issued the Gag order in a summary proceeding without any evidentiary hearing despite his own acknowledgement that Judge Martini had ruled that such a plenary hearing was necessary.

81. Federal Courts to address this issue have routinely held such gag orders in family court to be unconstitutional. See also Nichols v. Sivilli, 2:14-3821 (WJM), 2016 WL 3388296, at *4 (D.N.J. June 14, 2016) (involving three separate Gag Orders) and authorities cited therein.

82. State appellate courts also have repeatedly invalidated similar gag orders in family court. *In re T.T.,* 779 N.W.2d 602, 612 (Ne. App. 2009); State Ex Rel. LM, 37 P.3d 1188 (Utah App. 2001); *In re K.D.,* 929 N.E.2d 863 (Ind. App. 2010); *In Re Marriage of Newell*, 192 P.3d 529, 538 (Colo. App. 2008).

83. Plaintiff Argen wishes to interview Mr. Malhan on camera about his suit but is unable to do so fully by reason of the Gag Orders issued by the Court.

84. The Sivilli Gag Order prohibited Plaintiff from interviewing Malhan about a story of public interest.

85. Indeed, the previous suit by Paul Nichols received widespread attention, such as on the popular legal blog, The Volokh Conspiracy. <https://www.washingtonpost.com/news/volokh-conspiracy/wp/2014/12/30/first-amendment-challenge-to-broad-gag-order-on-family-court-litigants/?utm_term=.319d53b1e192>.

86. Although the Kessler Gag Order does not absolutely prohibit Malhan from speaking to the press, the restriction that Malhan not mention any "custody information" makes it impossible as a practical matter to perform a full and proper interview.

87. In fact, the primary issue that Malhan would want to discuss in an interview is his "loss" of custody, whether temporary or not.

88. Moreover, although in theory Malhan could talk about the Gag Order itself, he could not even speak meaningfully about that because he cannot explain the background and why he thinks the Gag Order is unconstitutional.

89. Third Parties subject to the effects of a gag order have standing to challenge such orders. *FOCUS v. Allegheny Cnty. Court of Common Pleas*, 75 F.3d 834, 836 (3d Cir. 1996).

90. Plaintiff Argen and other members of the press are substantially impaired in their ability to cover a story of public interest that could affect tens of thousands of parents and their children.

91. Declaratory relief alone appears to be inadequate to remedy the constitutional violations at issue here. Indeed, Judge Martini's decision was the effective equivalent of a declaratory Judgment yet Judge Kessler failed to comply with the federal court's December 2014 ruling that a Gag Order could; only be entered after more extensive proceedings.

92. Indeed, even after acknowledging on the record that a plenary hearing was

required, and even after scheduling a hearing at which no evidence was presented, Judge Kessler simply entered the June 2015 Gag Order "in the teeth" of this Court's December 2014 Order. Nichols v. Sivilli, CIV. 2:14-3821 WJM, 2014 WL 7332020 (D.N.J. Dec. 19, 2014)

Relief

WHEREFORE, Plaintiff respectfully requests that the Court:

    a.    Under the Declaratory Judgment Act, declare that the gag orders are unconstitutional under the First and Fourteenth Amendments and the Commerce Clause of the United States Constitution, and are therefore invalid and unenforceable;

    b.    Preliminarily and permanently enjoin Judge Kessler and those persons in concert or participation with them from taking any actions to enforce the gag orders.

    c.    Award Plaintiff reasonable costs and attorneys' fees pursuant to 42 U.S.C. § 1988; and

    d.    Award Plaintiff other and further relief as the Court deems proper.

Respectfully Submitted,

_____
Paul A. Clark, Esquire (PC4900)
10 Huron Ave, #1M
Jersey City, NJ 07306
(202) 368 5435

VERIFICATION

1. I am plaintiff in the above action and have personal knowledge of the facts asserted herein as they pertain to me.
2. The above complaint is true and accurate to the best of my knowledge. I certify that the foregoing statements are true. I am aware that if any of the foregoing statements made by me are willfully false I am subject to punishment.

_____
Surender Malhan

required, and even after scheduling a hearing at which no evidence was presented, Judge Kessler simply entered the June 2015 Gag Order "in the teeth" of this Court's December 2014 Order. Nichols v. Sivilli, CIV. 2:14-3821 WJM, 2014 WL 7332020 (D.N.J. Dec. 19, 2014)

Relief

WHEREFORE, Plaintiff respectfully requests that the Court:

    a.    Under the Declaratory Judgment Act, declare that the gag orders are unconstitutional under the First and Fourteenth Amendments and the Commerce Clause of the United States Constitution, and are therefore invalid and unenforceable;

    b.    Preliminarily and permanently enjoin Judge Kessler and those persons in concert or participation with them from taking any actions to enforce the gag orders.

    c.    Award Plaintiff reasonable costs and attorneys' fees pursuant to 42 U.S.C. § 1988; and

    d.    Award Plaintiff other and further relief as the Court deems proper.

Respectfully Submitted,

*[signature]*

Paul A. Clark, Esquire (PC4900)
10 Huron Ave, #1M
Jersey City, NJ 07306
(202) 368 5435

VERIFICATION

1. I am plaintiff in the above action and have personal knowledge of the facts asserted herein as they pertain to me.
2. The above complaint is true and accurate to the best of my knowledge. I certify that the foregoing statements are true. I am aware that if any of the foregoing statements made by me are willfully false I am subject to punishment.

*[signature]*

Surender Malhan

| | |
|---|---|
| ALINA MYRONOVA, | SUPERIOR COURT OF NEW JERSEY |
| Plaintiff, | CHANCERY DIVISION, FAMILY PART, ESSEX COUNTY |
| vs. | |
| SURENDER MALHAN, | DOCKET NO.: FM-07-1952-14 |
| Defendant, | ORDER |
| vs. | |
| VIKTORIYA MYRONOVA, | |
| Third Party Defendant. | |

JUN 18 2015
DONALD A. KESSLER, J.S.C.

**THIS MATTER** having been brought before this Court by Adam Shefki, Esq. attorney for Plaintiff, on a Return of Order to Show Cause, and upon proper notice to Paul Clark, Esq., attorney for Defendant, for the reasons stated on the record, and for good cause shown,

It is on this **18th** day of **June 2015** hereby **ORDERED**:

1. All parties are hereby restrained and enjoined from speaking with, appearing for an interview, or otherwise discussing any custody information to any reporters, journalists, newscasters or other news media employees or from posting any blogs or information not previously posted or disseminated relating to the children or any custody issue in this case pending a further hearing. Judge Sivilli's Gag Orders dated April 4, 2014 and May 1, 2014 are hereby vacated except as set forth above.

2. Plaintiff shall have parenting time consistent with the May 29, 2015 order as follows: Ms. Myronova may resume parenting time with the children at her apartment effective immediately on the condition that Mr. Rothstein shall not be within 4 blocks of the residence and shall not have any physical contact with the children during her

Exhibit 1 to Complaint

parenting time pending further Order of the Court. Further, if Ms. Myronova sees Mr. Rothstein publicly while the children are in her presence she shall walk the other way. Mr. Rothstein shall have no contact with the children by telephone, in person or otherwise in any form pending further Order of the Court.

3. During each parties' parenting time the parties shall provide appropriate supervision of the children based on the respective ages of the children.

4. The parties shall follow the attached summer parenting time schedule as consented to in Court on June 18, 2015.

5. Defendant shall reinstate Plaintiff's health insurance which includes medical and dental insurance pursuant to Rule 5:4-2(f) within 7 days from the date of this Order.

6. REDACTED

7.

8. The Court shall reserve on the issue of counseling pending Dr. Singer's report.

9. The Court shall reserve on the issue of attorneys' fees and costs to be addressed after the receipt of Dr. Singer's report.

10. The Court shall reserve on the issue of termination of spousal support pending final hearing.

11. Alimony shall be subject to a Mallamo v. Mallamo, 280, N.J. Super. 8 (App. Div. 1995) adjustment at the time of final hearing.

Exhibit 1 to Complaint

12. The Court does not have sufficient information or documentation to rule on the cost of living adjustment for child support.

_____
HON. DONALD A. KESSLER, J.S.C.

Exhibit 1 to Complaint



|  |  |
|---|---|
| **Alina Myronova** | SUPERIOR COURT OF NEW JERSEY |
|  | CHANCERY DIVISION |
|  | FAMILY PART |
| Plaintiff, | COUNTY OF ESSEX |
| v. |  |
|  | Docket No. FM-07-1952-14 |
|  | Civil Action |
| **Surrender Malhan** |  |
|  | **AMENDED ORDER** |
| Defendant/Third Party Plaintiff, |  |
| v. |  |
| **Viktoriya Myronova** |  |
| Third Party Defendant. |  |

**THIS MATTER** having been opened by the Court *sua sponte* based upon its review of its April 4, 2014 Order in conjunction with the April 7 Notice of Emergency Motion for Stay filed by Thomas C. Cifelli, Esq., attorneys for defendant and third party plaintiff Surrender Malhan, and the Court having reviewed the April 4, 2014 Order, and for good cause having been shown:

**It is on this 1ˢᵗ day of May, 2014 that the following Paragraphs of the April 4, 2014 Order are hereby amended *nunc pro tunc* to April 4, 2014:**

6. All parties are hereby enjoined and restrained without prejudice from speaking with, appearing for an interview, or otherwise discussing, the parties' marriage, their pending divorce, the within litigation, or the parties' children or making any derogatory or negative statements about the other parties to any reporters, journalists, newscasters, or other agents/employees of newspapers or other media outlets on the grounds that it is not

Exhibit 2 to Complaint

in the best interest of the children to have the parties' divorce litigation discussed in a public forum or to have public disparaging statements made about one party by the other party.

7. Any portions of Defendant's blog that addresses issues pertaining to this divorce litigation, Plaintiff, or Third Party Defendant shall be removed immediately. Defendant is prohibited without prejudice from publishing in the future anything to the blog pertaining to this divorce litigation or any negative or disparaging statements about plaintiff or third party defendant.

8. Both parties are hereby prohibited without prejudice from discussing or commenting about the within litigation or making any negative or disparaging statements about the plaintiff or third party defendant on any form of social media including without limitation, Facebook, Twitter, blogs, Instagram, and Pinterest on the grounds that it is not in the best interest of the children to have the parties' divorce litigation discussed in a public forum or to have negative or disparaging statements made about by one party about the other party publicized or disseminated.

**ORAL DECISION PLACED ON THE RECORD ON MAY 1, 2014.**

**AND IT IS HEREBY ORDERED** that a copy of this Order shall be served upon all interested parties within seven (7) days from the date herein.

_____
HON. NANCY SIVILLI, J.S.C.

Exhibit 2 to Complaint