## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

PAUL ARGEN and SURENDER
MALHAN,

              Plaintiffs,

v.

DONALD KESSLER and GURBIR S.
GREWAL,

              Defendants.

Civ. No. 18-963 (KM)(JBC)

**OPINION**

**KEVIN MCNULTY, U.S.D.J.:**

      The plaintiffs, Paul Argen and Surender Malhan, seek declaratory and injunctive relief from a June 2015 court order (hereinafter, "Gag Order") by the Honorable Donald Kessler of the Superior Court of New Jersey. Judge Kessler issued that Gag Order in the course of a divorce and custody dispute between Malhan and his ex-wife, Alina Myronova. Plaintiffs have also named the Attorney General of the State of New Jersey, Gurbir Grewal, as a defendant. Plaintiffs initially moved for temporary restraints and a preliminary injunction. I denied the request for temporary restraints but scheduled a hearing on the preliminary injunction, after which I reserved decision. Defendants now move to dismiss the complaint. I consolidated the preliminary injunction motion with the motion to dismiss for purposes of decision. For the reasons explained herein, I will grant defendants' motion to dismiss the complaint in its entirety as to Attorney General Grewal, and insofar as it seeks injunctive relief as to Judge Kessler. In addition, and in the alternative, I deny plaintiffs' motion for a preliminary injunction as moot in light of those dismissals.

1

## I. Summary[1]

### a. Factual history

This case stems from a long and contentious divorce and custody dispute in New Jersey family court.[2] Some but not all of the parties here are litigants in that state case. First, there is Surender Malhan himself. Paul Argen, his co-plaintiff, is a reporter who covers family court "abuses" in New Jersey, among other things. (Cplt. ¶ 4.) He has appeared on television and produces digital content for his reporting. (*Id.*) Donald Kessler, a judge of the Superior Court of New Jersey, Essex County, Family Division, issued the Gag Order currently in

---

[1] For ease of reference, certain key items from the record will be abbreviated as follows:

| "DE no. __" | = | Docket Entry in this case |
| "Cplt." | = | Verified Complaint [DE no. 1] |
| "Def. Br." | = | Brief in Support of Motion to Dismiss Verified Complaint [DE no. 13] |
| "Pl. Opp." | = | Plaintiffs' Opposition to Defendants' Motion to Dismiss [DE no. 17] |
| "Def. Reply" | = | Reply Brief in Further Support of Motion to Dismiss Verified Complaint [DE no. 23] |

[2] Malhan has pursued and is pursuing claims related to his divorce and custody dispute in other federal court actions.

In *Allen v. Bello* (consolidated with *Edelglass v. New Jersey* on appeal), Malhan and several other plaintiffs sought damages and injunctive relief against the New Jersey family court system. Nos. 14-760/15-3519, 2016 WL 1670927, at * 1 (D.N.J. Apr. 27, 2016). The plaintiffs claimed that they were deprived of substantive and procedural rights afforded to them under the Fourteenth Amendment of the United States Constitution. *Id.* at *17. Judge Wolfson denied their request for a preliminary injunction as moot, because she determined that plaintiffs had an adequate remedy at law. *Id.* at *1 (noting also that plaintiffs "[sought] to have this Court dramatically change the legal landscape of New Jersey and the laws governing child custody proceedings between parents"). Malhan also tried to litigate the gag order in that case but relief was denied on the grounds that he had not adequately exhausted his appeal rights after the denial of his request for interlocutory review by the Appeal Division. *Id.* at *15–*16. The judgment of the District Court was affirmed by the Court of Appeals. 861 F.3d 433, 433 (3d Cir. 2017).

In November 2016, Malhan filed a case against Christopher Porrino, Attorney General for New Jersey at the time, seeking to declare New Jersey's Anti-Harassment Statute, N.J.S.A. 2C:33-4, unconstitutional under the First, Second, and Fourteenth Amendments. *Malhan v. Porrino*, No. 16-8889 (D.N.J.). That case is ongoing.

dispute. (*Id.* ¶ 5.) Nancy Sivilli, a judge of the Family Division in Essex County, issued earlier gag orders but later recused herself from Malhan's case. (*Id.* ¶¶ 16, 26.) Gurbir Grewal is the Attorney General for the State of New Jersey. (*Id.* ¶ 6.) Alina Myronova is Malhan's ex-wife; in the state court proceedings she has sought full legal and physical custody of both of their children. (*Id.* ¶ 7.)

The events relevant to this case begins in February 2011, when the family court awarded custody of the children to Myronova, while granting Malhan limited visitation rights. (Cplt. ¶¶ 11–12.) Later, in June 2012, joint custody was restored. (*Id.* ¶ 13.) On February 18, 2014, Malhan was interviewed by a reporter regarding his custody battle, and the interview was broadcast on the local television station, WWOR-TV (known as "Channel 9" or "my9"). (*Id.* ¶ 15.) This interview led to the first gag order, issued by Judge Sivilli on April 4, 2014. (*Id.* ¶ 16.) She prohibited Malhan from discussing with the media or posting on the internet any material regarding the issues surrounding his divorce or custody proceedings, and ordered him to remove specific parts of a piece he had already posted on a website that criticized the decisions of the court. (*Id.* ¶¶ 16–17.) Judge Sivilli's order was later amended on May 1, 2014, but the prohibition on posting online or discussing the case with the media remained substantially the same. (*Id.* (Ex. B).)

On May 6, 2014, Malhan brought suit in federal court seeking a declaration that Judge Sivilli's gag order was unconstitutional. (*Id.* ¶ 20.) Judge Wolfson did not act upon Malhan's motion for a temporary restraining order against enforcement of the gag order, relying on the *Rooker-Feldman* doctrine. (*Id.*) Malhan sought interlocutory appellate review of Judge Sivilli's gag order in state court, but review was denied. (*Id.* ¶ 21.)

In June 2014, Malhan joined with Paul Nichols, an investigative reporter with *The Bergen Dispatch*, to bring a second federal court action to enjoin enforcement of Judge Sivilli's May 1, 2014 gag order, captioned *Nichols v. Sivilli*, No. 14-3821 (D.N.J.). Defendants Judge Sivilli and Essex County Superior Court brought a motion to dismiss, which was denied by the Hon.

William J. Martini of this Court.[3] Judge Martini noted that Malhan and Nichols alleged in their complaint that Judge Sivilli, when entering her gag order, had failed to analyze whether other, less drastic remedies would effectively mitigate any harm or prejudice resulting from publicity of the issues subject to that gag order. (*Id.* ¶ 24.) Judge Sivilli then scheduled an evidentiary hearing to weigh the best interests of the children against Malhan's First Amendment rights. That hearing, however, was cancelled. (*Id.* ¶¶ 25–26.) Granting a motion by Malhan, Judge Sivilli recused herself from further participation in the case, which was reassigned to Judge Kessler.[4] (*Id.* ¶¶ 26–27.)

Judge Kessler scheduled a plenary hearing on the Sivilli gag order for June 18, 2015. (*Id.* ¶¶ 28, 29.) At the hearing, Myronova did not present any witnesses or submit any evidence. (*Id.* ¶ 30.) After the hearing, Judge Kessler vacated the previous two orders and entered a new order.

That new order, dated December , 2015 (the Gag Order now at issue) barred both Malhan and Myronova "from speaking with, appearing for an interview, or otherwise discussing any custody information to any reporters, journalists, newscasters or other news media employees or from posting any blogs or information not previously posted or disseminated relating to the children or any custody issue in this case pending a further hearing." (*Id.* (Ex. A ¶ 1).) It is fair to say that Judge Kessler intended this Gag Order as an interim measure to preserve the status quo while the parties compiled the necessary record regarding the effect of publicity on the children. The Gag Order was explicitly entered "pending a further hearing." (*Id.*)

I do not summarize Judge Kessler's statement of reasons, or the facts on which the decision was based. Those confidential matters may be found at DE 9-1 pp. 6–18.

The order contemplated a period of 30 days to obtain a psychological evaluation. Judge Kessler required that Malhan, Myranova, and the children

---

3   *Nichols v. Sivilli*, No. 14-3821, 2014 WL 7332020 (D.N.J. Dec. 19, 2014).

4   *See Nichols v. Sivilli*, 130 F. Supp. 3d 912, 914 (D.N.J. 2015).

attend evaluations conducted and scheduled by Dr. Ralph Fretz as part of an effort to secure an expert psychological report, based upon which he could make findings and modify the order as needed. (Kessler Decl. ¶¶ 3-4.) Malhan, however, refused to cooperate. Initially, Malhan declined to attend the court-ordered psychological evaluation sessions with Dr. Fretz at all. (Id.) Dr. Fretz notified the court that he was moving out of state and could no longer finish the report for the case, attributing his withdrawal in part to Malhan's failure to cooperate. (Id. ¶ 5.) At a hearing on August 10, 2016, Judge Kessler expressed concern about the resignation of Dr. Fretz and the lack of any psychological evaluation of how publicity about the custody and divorce battle would affect the well-being of the children. (Id. ¶ 6.) He reminded the parties that he could not consider the issue of modifying the restrictions until he had received such an evaluation. (Id. ¶ 7.)

Adding to Judge Kessler's evident frustration was the difficulty in finding a new psychological expert. One major obstacle was Malhan's insistence on tape recording any interview with any psychologist selected by the court, a condition few psychologists would accept. (Id. ¶ 8.) One psychologist, Dr. Madeleine Milchman, stated that she would permit tape recording. Shortly thereafter, however, she informed the court that she did not wish to participate in the case. (Kessler Decl. ¶¶ 10–11.) The court attempted to engage a psychological expert who had earlier been involved in the case, Dr. Mary Pasternack. Dr. Pasternack informed the court that because of the numerous difficulties she had encountered with Malhan in earlier sessions, she did not wish to participate. (Kessler Decl. ¶ 12.)

Judge Kessler concluded that further efforts to obtain a joint court-ordered report about the psychological effect of publicity on the children would be futile. At a February 24, 2017 case management conference, Judge Kessler hit on a next-best alternative that did not require the parties to agree: he bypassed the court-appointed expert and entered an order requiring Malhan and Myronova to separately retain their own experts who could provide

separate expert opinions for the court's consideration. Those opinions were to include, *inter alia*, an assessment of "any adverse effect or harm to either of the children by any publicity of this case or discussion with third parties which may came within purview of the children's knowledge." (*Id.* ¶ 13 & Ex. C (order).) As of the date of Judge Kessler's Declaration, neither side had complied. (*Id.* ¶ 14.)

Meanwhile, back in federal court before Judge Martini, Nichols had amended his complaint to add Judge Kessler as a defendant. (Cplt. ¶¶ 40–43.) Very shortly thereafter, in June 2016, Mr. Nichols passed away. None of Mr. Nichols's business associates or heirs wished to pursue the litigation, and the federal court case was closed. (*Id.* ¶¶ 44–45.) The custody case continued in the Family Division, but the issue of the 2015 Gag Order lay uncontested for some time. (*See id.* ¶¶ 46–47.)

Eventually, Argen, like Nichols a reporter, became interested in the case and expressed a desire to conduct an interview with Malhan about his custody battle. (*Id.* ¶ 78.) Argen joined Malhan as plaintiff in filing this new action in 2018. It appears that Judge Kessler has now recused himself from the family court proceeding. (*Malhan v. Porrino*, D.N.J., Civ. No. 16-8889, DE no. 48).[5] The state family court case is now being heard by Judge David Katz.

### b. Procedural history

On January 23, 2018, Argen and Malhan brought suit seeking to prevent the defendants from enforcing the Gag Order issued by Judge Kessler. (*See* Cplt.) They immediately made a motion for a preliminary injunction and

---

[5]    Judge Kessler's recusal may alter the form, but not the substance, of the issues asserted. True, his recusal moots any claim for injunctive relief against him personally. *See Hamilton v. Bromley*, 862 F.3d 329, 335 (3d Cir. 2017) ("[A] case is moot if developments occur during the course of adjudication that eliminate a plaintiff's personal stake in the outcome of a suit or prevent a court from being able to grant the requested relief." (internal quotations omitted)). Judge Katz, however, now stands in the shoes of Judge Kessler. As necessary, any reference to arguments made by the parties about Judge Kessler shall be deemed to apply to Judge Katz as presiding judge.

temporary restraints. (DE no. 4.) I denied the request for temporary restraints but scheduled a hearing on the preliminary injunction on February 20, 2018. (DE no. 5.) At this motion hearing, the parties rested on their papers and did not introduce testimonial evidence. Defendants did claim, however, that part of the reason for the persistence of the Gag Order was Malhan's refusal to participate in a psychological evaluation to determine the potential harm to his children from the publicity of the dispute. On April 6, 2018, I issued a procedural order asking that counsel "report in writing on the progress being made to furnish psychological reports as ordered by Judge Kessler" and consolidated the preliminary injunction motion with the disposition of the present motion to dismiss. (DE no. 16.)

In response to the procedural order, counsel for plaintiffs filed a declaration explaining the status of the psychological reports, as well as a curriculum vitae of Dr. Lidia Abrams and a transcript of a March 16, 2018 hearing before Judge Kessler. (DE no. 18.) In a letter, the defendants responded to the Court's request and plaintiffs' submissions, stating that "neither Mr. Malhan nor Ms. Myronova has complied with Judge Kessler's order." (DE no. 19 at 1.) They also noted that "Judge Kessler had already previously secured an expert who was to provide such expert opinion" and argued that Malhan's submissions to the court were irrelevant, as they dealt with the issue of hiring a reunification therapist. (*Id.* at 2.)

Defendants lay out six arguments as to why the complaint should be dismissed: (1) injunctive relief against Judge Kessler is not available under Section 1983; (2) Judge Kessler is not a proper defendant under Section 1983; (3) Judge Kessler enjoys absolute immunity; (4) the claims are barred by the *Rooker-Feldman* doctrine; (5) the Court should abstain from hearing the claims under the *Younger* doctrine; and (6) the claims are not ripe for consideration. (*See* Def. Br.) I will discuss those issues in the following order.

In Section II, I briefly set forth the applicable standards of review.

In Section III, I deal with some threshold grounds for dismissal on jurisdictional or abstention grounds: First I hold that the action should not be

7

dismissed for lack of subject matter jurisdiction under the *Rooker-Feldman* doctrine (III.a); next I hold that the action should be not be dismissed based on *Younger* abstention (III.b); and then I hold that the action should not be dismissed on ripeness grounds (III.c).

In Section IV, I discuss the remaining grounds for dismissal. Against a sitting judge, I hold, injunctive relief is unavailable under § 1983 (IV.a.1). Against Attorney General Grewal, I find, no facts suggestive of liability have been pled. (IV.a.2) Finally, I deny the motion for a preliminary injunction as moot in light of the dismissals. (IV.b).

## II.     Standards of Review

Rule 12(b)(1) governs jurisdictional challenges to a complaint. These may be either facial or factual attacks. *See* 2 Moore's Federal Practice § 12.30[4] (3d ed. 2007); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). A facial challenge asserts that the complaint does not allege sufficient grounds to establish subject matter jurisdiction. *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015); *Iwanowa v. Ford Motor Co.*, 67 F. Supp. 2d 424, 438 (D.N.J. 1999). A court considering such a facial challenge assumes that the allegations in the complaint are true, and may dismiss the complaint only if it nevertheless appears that the plaintiff will not be able to assert a colorable claim of subject matter jurisdiction. *Iwanowa*, 67 F. Supp. 2d at 438; *Cardio–Med. Assoc., Ltd. v. Crozer–Chester Med. Ctr.*, 721 F.2d 68, 75 (3d Cir. 1983). As to a facial jurisdictional attack, then, the standard is similar to the one that applies to an ordinary motion to dismiss under Rule 12(b)(6).

Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Animal Science Products, Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n.9 (3d Cir. 2011). For the purposes of a motion to dismiss, the facts alleged in the complaint are accepted as true and all reasonable inferences are

drawn in the favor of the plaintiff. *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014). Federal Rule of Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570.

## III. Jurisdiction and Abstention

### a. *Rooker-Feldman*

Defendants argue that the Court lacks jurisdiction to hear the plaintiffs' claims under the *Rooker-Feldman* doctrine. (Def. Br. 18.) They describe plaintiffs as impermissibly seeking federal district court review of an adverse order from a state family court proceeding. This case has two plaintiffs, one of whom, Malhan, disputes a ruling against him in the state case, but the other of whom, Argen, is a third party asserting his rights as a member of the press. The *Rooker-Feldman* grounds would not in any event apply to plaintiff Argen, who is not a party to the state case. As to Malhan, the doctrine's application is at best doubtful, because the Third Circuit has explicitly reserved the issue of whether it applies to interlocutory state court orders.

Under the *Rooker-Feldman* doctrine,[6] district courts are prohibited from exercising jurisdiction over "'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Id.* (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). Four requirements must be met before the doctrine

---

6     The titular cases are *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

can apply: "(1) the federal plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state-court judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." *Id.* (quoting *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010)).

I first consider Argen, the clearer case. The Third Circuit has held that non-parties to state court litigation—family court litigation, as it happened—were not barred from pursuing claims about the constitutionality of gag orders in federal court. *FOCUS v. Allegheny Cty. Court of Common Pleas*, 75 F.3d 834, 841 n.4 (3d Cir. 1996) ("Under *Valenti [v. Mitchell*, 962 F.2d 288, 298 (3d Cir. 1992)], however, *Rooker-Feldman* does not prohibit third parties—such as plaintiffs here—from challenging a state court gag order in federal court.").[7] Argen was not a state-court loser at all. It is true that technically, it remains an open issue whether there may be some circumstances under which a non-party's claim can be barred by *Rooker-Feldman*. *See Lance v. Dennis*, 546 U.S. 459, 466 (2006) (noting that "[t]he *Rooker-Feldman* doctrine does not bar actions by nonparties to the earlier state-court judgment" when the nonparties could be considered in privity with a party to the state court judgment, but observing that the question of "whether there are *any* circumstances, however limited, in which *Rooker-Feldman* may be applied against a party not named in an earlier state proceeding" has not been decided). Still, no unusual factors are proffered here, and *FOCUS* dictates that Argen is not barred from pursuing his constitutional claims in federal court.

Whether *Rooker-Feldman* applies to Malhan is a more complicated question. True, federal courts have routinely applied the doctrine to bar federal court relitigation of decisions rendered by family courts. *See, e.g., Johnson v. City of New York*, 347 F. App'x 850, 852 (3d Cir. 2009) ("[T]o the extent that

---

[7]    I set aside the particulars of the third-party status in that case, where the federal plaintiffs were currently pursuing an appeal of the denial of their motion to intervene in the state court case. *See FOCUS*, 75 F.3d at 841.

Johnson actually seeks review of decisions rendered by the Queens County Family Court, the *Rooker-Feldman* doctrine bars review."); *White v. Supreme Court of New Jersey*, 319 F. App'x 171, 172-73 (3d Cir. 2009) (affirming the district court's decision to not review, among other things, plaintiff's denial of a petition for certification, appealing her child custody case).

Malhan's contention here, however, is that he is not seeking to review a state court judgment, but an order issued against him during the course of ongoing state court proceedings. (*See* Pl. Opp. at 27.) *Rooker-Feldman*, he argues, applies to final state court judgments, not to interlocutory orders.

*Rooker-Feldman* is most commonly applied where a state court judgment precedes the filing of a federal action. Whether *Rooker-Feldman* also applies to interlocutory state court orders is a vexed question.[8] The state of the law in the Third Circuit I would describe as almost-but-not-quite:

> We have ordinarily applied the doctrine to prevent review of final decisions of state courts. *See GM Trucks II,* 134 F.3d at 143; *FOCUS v. Allegheny County Court of Common Pleas,* 75 F.3d 834, 840 (3d Cir.1996). In *Port Authority Police Benevolent Association v. Port Authority Police Department,* 973 F.2d 169 (3d Cir.1992), however, we found the doctrine precluded review of a preliminary injunction issued by a state court. *Id.* at 178 (finding the doctrine applicable because "the preliminary injunction issued by the New York trial court ... resolved, at least for the moment, the dispute between the parties which forms the basis of the federal complaint at issue in this case").

---

8 The case law in other Circuits is to some degree split. *Compare Pieper v. Am. Arbitration Ass'n, Inc.,* 336 F.3d 458, 462 (6th Cir. 2003) (joining "with the majority of circuits that have concluded that the *Rooker–Feldman* doctrine does apply to interlocutory orders and to orders of lower state courts.") (collecting cases), *and Brown & Root, Inc. v. Breckenridge,* 211 F.3d 194, 199 (4th Cir.2000) (observing that "[i]t cannot be the meaning of *Rooker–Feldman* that, while the inferior federal courts are barred from reviewing final decisions of state courts, they are free to review interlocutory orders"), *with Cruz v. Melecio,* 204 F.3d 14, 21 n. 5 (1st Cir.2000) ("[D]enying jurisdiction based on a state court judgment that is not eligible for review by the United States Supreme Court simply would not follow from the jurisdictional statute that invigorated the *Rooker–Feldman* doctrine in the first place.").

*In re Diet Drugs*, 282 F.3d 220, 241 (3d Cir. 2002).[9]

In the *Port Authority* case cited in the quotation, the precise issue presented was not whether *Rooker-Feldman* applied to a state trial court's *interlocutory* orders; the plaintiffs were arguing that it did not apply to trial-level orders *at all. See* 973 F.2d at 177. There, a New York State trial court had entered a preliminary injunction rejecting a First Amendment challenge and enforcing a Port Authority rule prohibiting the Police Benevolent Association ("PBA") from soliciting contributions from Port Authority tenants. The PBA filed an appeal to the Appellate Division. At the same time, the PBA filed an action in this federal court, seeking on First Amendment grounds to enjoin the Port Authority from enforcing the no-solicitation rule. The Third Circuit had little difficulty rejecting the proposition that *Rooker-Feldman* does not apply to decisions of trial-level state courts:

> The PBA and Trotter argue that the *Rooker–Feldman* doctrine does not apply in the instant case because, in their view, that doctrine only precludes federal review of orders issued by a state's highest court, and does not apply to cases where, as here, litigants seek federal review of an order issued by a lower state court. However, if federal district courts are precluded, as they are, from reviewing the decisions of a state's highest court, even when those decisions appear to the district court to have been plainly in violation of the Constitution, then federal district courts are certainly also precluded from reviewing decisions of lower state

---

9    *FOCUS*, while permitting a non-party to challenge an interlocutory gag order in federal court, seemed to indicate that a party to the state family court litigation would have been barred by *Rooker-Feldman* from doing so:

> The defendants argue that *Rooker–Feldman* bars the [third-party advocacy group's] federal claims in part because the First Amendment issues were "inextricably intertwined" with the judge's gag order decisions. That is correct inasmuch as the parties to the [state family court] case could not bring a First Amendment case in federal court challenging the gag orders.

75 F.3d at 841 n.4. *FOCUS*, however, did not specifically discuss the issue of *Rooker-Feldman's* application to interlocutory versus final orders.

courts, which are subject to correction and modification within the state court system. Indeed, most courts of appeals to consider the issue have held that the *Rooker–Feldman* doctrine applies with equal force when litigants seek federal review of the orders of lower state courts.

973 F.2d at 177.

That said, the *Port Authority* Court did recognize the state court order as interlocutory. *Id.* at 175–77. Its rationale was tied up in its explicit approval of the reasoning of an earlier Eighth Circuit case applying *Rooker-Feldman* to interlocutory orders:

> In *Keene Corp. v. Cass*, 908 F.2d 293 (8th Cir.1990), for example, the Court of Appeals for the Eighth Circuit affirmed, under the *Rooker–Feldman* doctrine, a federal district court's dismissal of Keene Corp.'s federal complaint, in which Keene Corp. had challenged the constitutionality of a state trial court's discovery order in a pending state trial. The court, noting that "[w]e agree with the decisions of other circuits holding that the *Feldman* doctrine applies to state court judgments that are not yet final," id. at 297 n. 3, explained that Keene Corp sought precisely what the *Rooker–Feldman* doctrine prohibits:
>
>> [w]here a litigant attempts to circumvent the requirement of seeking direct review in the United States Supreme Court by casting her lawsuit as a section 1983 action, Feldman's jurisdictional bar applies.
>
> *Id.* at 297. The court thus applied the *Rooker–Feldman* doctrine in a context quite similar to that which confronts us in the present case: the PBA and Trotter, like Keene Corp., desired federal district court review over the interlocutory order of a lower state court. Like the Eighth Circuit, we hold that the *Rooker–Feldman* doctrine precludes such review.

*Port Auth. PBA*, 973 F.2d at 177–78. And finally, albeit in the alternative, *Port Authority* explicitly stated that "the interlocutory nature of the New York state court's order [a preliminary injunction] does not preclude the application of the *Rooker–Feldman* doctrine in the instant case." *Id.* at 178.

Nevertheless, *In re Diet Drugs* treated the *Port Authority* language as dictum, an interpretation I accept as authoritative. That, the age of the case,

and subsequent developments in the *Rooker-Feldman* Supreme Court case law raise significant doubts in my mind as to the applicability of *Rooker-Feldman* to the claims of Malhan here.[10] Mindful of the Third Circuit's admonition that the doctrine is to be construed narrowly, I will not apply it in this doubtful case.

I will therefore deny the motion to dismiss the case on jurisdictional grounds as to both Argen and Malhan. As to both (although admittedly *dubitante* as to Malhan) I proceed to consider the remaining issues.

### b. *Younger* abstention

Defendants ask the Court to refrain from hearing this case under the *Younger*[11] abstention doctrine. *Younger* abstention requires dismissal of certain federal claims for injunctive or declaratory relief that would interfere with pending state court proceedings. *See Younger*, 401 U.S. at 41; *Samuels v. Mackell*, 401 U.S. 66, 73 (1971) ("[W]here an injunction would be impermissible under [*Younger's*] principles, declaratory relief should ordinarily be denied as well."); *Moore v. Sims*, 442 U.S. 415, 423-26 (1979). This doctrine "reflects a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." *Cresci v. BCB Community Bank*, 728 F. App'x 145, 148 (3d Cir. 2018) (quoting *Gwynedd Properties, Inc. v. Lower Gwynedd Twp.*, 970 F.2d 1195, 1200 (3d Cir. 1992)). For the reasons stated below, I deny the motion to dismiss on *Younger* grounds with respect to both Argen and Malhan. As in the case of *Rooker-Feldman,* however, the analysis differs as between Argen as a non-party and Malhan as a party to the state litigation.

The parties do not disagree that as to a non-party member of the press like Argen, abstention is generally inappropriate. Abstention is inappropriate

---

[10]    *Rooker-Feldman* has been refined in the years since *Port Authority* and *Diet Drugs* were decided, and courts have warned against overbroad application of the doctrine. *See, e.g., Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005); *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010).

[11]    The reference is to *Younger v. Harris*, 401 U.S. 37 (1971).

because such a person is not a party to the state proceeding, so an injunction will not interfere with the adjudication of his or her state-law rights. *See FOCUS*, 75 F.3d at 843 (explaining that "there must be an ongoing state judicial proceeding *to which the federal plaintiff is a party* and with which the federal proceeding will interfere" (emphasis added)). As to Argen, then, I would not dismiss this action on *Younger* grounds.

Malhan, however, is a party to the state case, so a more substantive analysis is required. *Younger* is based on principles of federalism and comity. A federal court should not abstain "simply because a pending state-court proceeding involves the same subject matter." *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013). However, there are "certain instances in which the prospect of undue interference with state proceedings counsels against federal relief." *Id.* The Supreme Court has extended *Younger* abstention "to particular state civil proceedings...that implicate a State's interest in enforcing the orders and judgments of its courts." *Id.* at 72-73. Those circumstances are "exceptional" and are limited to (1) state criminal prosecutions; (2) civil enforcement proceedings; and (3) civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *Id. at 78*; *see also Hamilton v. Bromley*, 862 F.3d 329, 337 (3d Cir. 2017).

The case here clearly does not fall into either of the first two categories; it does not involve a state criminal prosecution nor does it involve a civil enforcement proceeding. The question is whether the matter can appropriately be deemed a civil proceeding in the third category, involving orders that are "uniquely in furtherance of the state courts' ability to perform their judicial functions."

Post-*Sprint,* district courts have split over the question of whether to apply *Younger* when the pending state action involves domestic relations. *See Wigley v. Wigley*, No. 17-425, 2018 WL 2172507, at *1, n.2 (W.D. Va. May 10, 2018) (collecting cases); *Lawn Managers, Inc. v. Progressive Lawn Managers,*

*Inc.*, No. 16-144, 2017 WL 76898, at *3 (E.D. Mo. Jan. 9, 2017) ("[I]t appears that this state order [dividing marital property], as a domestic relations decree, is of a kind uniquely in furtherance of the state courts' ability to perform their judicial functions.") (internal quotation marks omitted); *but see, e.g., Strom v. Corbett*, No.14-1518, 2015 WL 4507637, at *9 (W.D. Pa. July 24, 2015) (ruling that, after *Sprint*, *Younger* does not apply when the pending state action is a divorce proceeding). Some of the cases that do apply *Younger* abstention in the domestic relations context I find unpersuasive because they may have given *Sprint* short shrift and relied on the pre-*Sprint, Middlesex* factors. *See Cole v. Montgomery*, No. 14-4462, 2015 WL 2341721, at *7 (D.S.C. May 12, 2015) (applying *Younger* abstention to property claims brought in federal court against ex-husband when the same property was the subject of ongoing state divorce proceedings but not mentioning the *Sprint* factors); *Key v. Lilley*, No. 16-130, 2016 WL 8292132, at *3 (E.D. Va. June 29, 2016) (applying *Younger* abstention to federal action alleging constitutional violations arising from state divorce proceedings when those proceedings were still ongoing but not mentioning the *Sprint* factors).

Judge Wolfson of this Court addressed the question in the context of family court proceedings and the earlier gag order:

> The Family Court proceedings underlying the present case do not fall under any of the three categories delineated by the Supreme Court in *Sprint*. The same is true of the 'gag order' against Malhan. . . . These proceedings were not criminal proceedings. Nor were they civil enforcement proceedings, as there was no claim that Plaintiffs violated any civil statute. Finally, the Family Court proceedings and orders at issue here are not analogous to contempt hearings, and therefore do not fall into the category of proceedings which further the state's ability to perform judicial functions.

*Edelglass*, No. 14-760, 2015 WL 225810, at *11, *aff'd sub nom. Allen v. DeBello*, 861 F.3d 433 (3d Cir. 2017); *see also Juidice v. Vail*, 430 U.S. 327, 335 (1977) (noting that the contempt power "lies at the core of the

16

administration of a state's judicial system."). I agree with Judge Wolfson's analysis and similarly hold that Malhan's case does not fall into any of the "exceptional" categories to which *Younger* abstention applies. Therefore, defendants' motion to dismiss on this ground is denied.

After separately analyzing the issue as to each plaintiff, as is necessary in this context, I find that *Younger* abstention is not appropriate for either in light of both *FOCUS* and *Sprint.*

### c. Ripeness

Defendants move that the complaint be dismissed on ripeness grounds, urging that the Gag Order could be modified at any time and moot the issues. (Def. Br. at 23.)

Dismissal on ripeness grounds is not appropriate here. "The function of the ripeness doctrine is to determine whether a party has brought an action prematurely, and counsels abstention until such time as a dispute is sufficiently concrete to satisfy the constitutional and prudential requirements of the doctrine." *Wayne Land & Mineral Grp. LLC v. Delaware River Basin Comm'n,* 894 F.3d 509, 522-23 (3d Cir. 2018) (quoting *Peachlum v. City of York,* 333 F.3d 429, 433 (3d Cir. 2003)). A claim is ripe for review if (1) it is fit for judicial decision and (2) withholding court consideration of the issue would constitute a hardship to the parties. *Id.* In the context of a declaratory judgment, for example, application of the ripeness doctrine is guided by three main considerations: "the adversity of the parties' interests, the conclusiveness of the judgment, and the practical utility of that judgment." *Id.* I take those factors as a guide.

Here, the Gag Order is unquestionably in effect, not merely threatened. It is true that it was entered on an interim basis, pending the parties' submission of psychological reports, which has not occurred. Nevertheless, the plaintiffs' claims are sufficiently concrete in relation to an actual, not hypothetical order (albeit one that is subject to modification, and might be modified if the plaintiff

would cooperate with the court's fact-gathering efforts). The relief sought would, if granted, potentially settle the parties' legal relations.

It is the prospect of mootness or modification, not the Gag Order itself, that is speculative or unripe. I therefore do not dismiss these claims on ripeness grounds.

## IV.    Other Grounds

### a.    Defendant-specific grounds for 12(b)(6) dismissal

I next consider dismissal on grounds specific to these particular defendants. Judge Kessler (or his successor, Judge Katz), claims that injunctive relief is not available against a judge under § 1983. Attorney General Grewal asserts that no facts suggestive of liability are pled against him. On both scores, I agree.

#### 1. Judge Kessler

The background to any § 1983 action against a judge is that judges enjoy absolute immunity from claims for damages based on judicial acts.[12] Section 1983 expands that principle by explicitly disallowing injunctive relief against judicial officers in most cases:

> [I]n any [§ 1983] action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983. *See also Mikhail v. Khan*, 572 F. App'x 68, 71 (3d Cir. 2014) (upholding dismissal of § 1983 claims against state judge based on rulings involving "Pennsylvania's Protection From Abuse statute, and its divorce, custody, and visitation laws" where the plaintiff does not allege that the judge violated a declaratory decree or that declaratory relief was not available in his case); *Patel v. DeCarolis*, 701 F. App'x 590, 592 (9th Cir. 2017) (upholding dismissal of § 1983 claim for injunction against state judge's conduct in

---

[12] *See Stump v. Sparkman*, 435 U.S. 349, 362 (1978); *Dongon v. Banar*, 363 F. App'x 153, 155 (3d Cir. 2010) (citing case law).

plaintiff's "state marital dissolution proceedings"); *Rashduni v. Dente*, No. 16-240, 2016 WL 4035437, at *1 (D.N.J. July 26, 2016) (granting motion to dismiss claim for injunctive relief against New Jersey court judge for "wrongfully vacat[ing] a joint custody agreement," allegedly in violation of plaintiff's constitutional rights); *see also Ludwig v. Berks Cty., Pa.*, 313 F. App'x 479, 482 (3d Cir. 2008) (affirming the dismissal of a suit against a state court judge over alleged actions in a divorce proceeding and noting that all three doctrines—the Section 1983 exception for judicial officers, Eleventh Amendment immunity, and judicial immunity—applied).

Judge Kessler's issuance of the Gag Order was a judicial act taken in his judicial capacity. *See Affeldt v. Carr*, 628 F. Supp. 1097, 1101 (N.D. Ohio 1985) (describing how "the issuance of gag orders" is a judicial act because it is a "prerogative[] of a judge"); *see also Stump v. Sparkman*, 435 U.S. at 362 ("The relevant cases demonstrate that the factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity."). Although plaintiffs allege procedural deficiencies relating to the issuance of the Gag Order, a judicial act "does not lose its judicial character merely because it...is imbued with procedural error." *Gallas v. Supreme Court of Pennsylvania*, 211 F.3d 760, 770, n.8 (3d Cir. 2000); *see also Stump*, 435 U.S. at 359 ("A judge is absolutely immune from liability for [his or her] judicial acts even if [his or her] exercise of authority is flawed by the commission of grave procedural errors.").

Consequently, the only way Malhan could obtain injunctive relief against a state court Judge for issuing (or not modifying) the Gag Order would be to demonstrate that the Judge violated a prior declaratory judgment or that declaratory relief is unavailable. *See* 42 U.S.C. § 1983; *Mikhail*, 572 F. App'x at 71. In that regard, Malhan asserts that "Judge Martini's decision was the effective equivalent of a declaratory [j]udgment[,] yet Judge Kessler failed to comply with the federal court's December 2014 ruling that [the] Gag Order

could[ ] only be entered after more extensive proceedings." (Cplt. ¶ 91) I take this as a claim that the 2015 Gag Order violated a declaratory judgment entered by Judge Martini.

I do not agree. Judge Martini's opinion was not a declaratory judgment or the "effective equivalent" of one. The opinion itself does no more than deny a motion to dismiss made by the State Judge and the Superior Court, and it analyzes the issues within a Rule 12(b)(6) framework. *See Nichols v. Sivilli*, No. 14-3821, 2014 WL 7332020, at *6 (D.N.J. Dec. 19, 2014). Judge Martini examined the complaint and the gag order then at issue, and found that Nichols had sufficiently pled that the order violated the First Amendment. *Id.* Far from suggesting a foundation for injunctive relief, Judge Martini's opinion explicitly denied Nichols's request for injunctive relief under Section 1983. *Id.* Nowhere in the opinion is there an order styled as a declaratory judgment (or indeed affording affirmative relief of any kind). That Judge Sivilli or Judge Kessler, in the spirit of Judge Martini's ruling, later attempted to hold hearings and gather evidence in connection with the gag order is not evidence that the federal court had ordered declaratory relief or enjoined them to do so. At most it is evidence that the state court was trying, with precious little cooperation from the litigants, to gather evidence of potential harm to the children that would justify continuation, modification, or dissolution of the gag order.

Judge Martini denied a motion to dismiss, permitting the action to proceed with respect to the First Amendment challenge. Following the death of Mr. Nichols, the case never went any further, and was effectively abandoned.[13]

---

[13]    In September 2015, Judge Martini denied a motion for default judgment but granted a cross-motion to dismiss by Judge Sivilli (who had already recused herself from the custody and divorce dispute at this point in the case). *Nichols v. Sivilli*, 130 F. Supp. 3d 912, 915–16 (D.N.J. 2015). The order of dismissal was granted on mootness grounds because the gag order had been vacated in its then-current form, but with leave to amend. *Id.* In June 2016, Judge Martini denied another motion to dismiss (this time by the Honorable Jane Gallina-Mecca of the Superior Court), denied a motion to reinstate claims against Judge Sivilli by Nichols, and granted another motion to amend the complaint by Nichols. *Nichols v. Sivilli*, No. 14-3821, 2016 WL 3388296, at *1–*4 (D.N.J. June 14, 2016).

Losing Nichols as a plaintiff, however, is not the same as saying that declaratory relief was, or became, "unavailable" within the meaning of § 1983. Without a violation of a declaratory judgment and without a showing that declaratory relief is otherwise unavailable, Malhan cannot obtain injunctive relief against the Judge in the state court action. *See* 42 U.S.C. § 1983; *Mikhail*, 572 F. App'x at 71.

The complaint is therefore dismissed insofar as it seeks injunctive relief against Judge Kessler. Defendants' motion does not, however, address the claim for declaratory relief, which remains.

### 2. NJ Attorney General Grewal

As to the State Attorney General, the theory of the Complaint is difficult to discern. Plaintiffs do not explain what role, if any, Attorney General Grewal did or would play in obtaining or enforcing the Gag Order. Nor do the plaintiffs really even justify the presence of AG Grewal as what a securities lawyer might call a "relief defendant," *i.e.*, one whose presence is necessary for the fashioning of effective relief. The only mention of AG Grewal in the body of the complaint is that he is "charged with defending the constitutionality of [the] state action and state laws" and that he is "sued in his official capacity." (Cplt. ¶ 6) Plaintiffs' opposition briefing adds little in the way of explanation: "[T]he Attorney General is a proper defendant," they say, because "the Attorney General is tasked generally with defending the State and State officers who act unconstitutionally, and defending State statutes in particular." (Pl. Opp. at 36-38) Plaintiffs unconvincingly attempt to connect that generalized statement of the Attorney General's duties as attorney for the State to Judge Kessler's statement that he had been acting pursuant to his statutory obligation in issuing the Gag Order. (*Id.*)

In short, the Complaint fails to allege factually what AG Grewal supposedly did wrong, how it connects to a § 1983 cause of action, or what effective relief could or should be ordered as against him. The complaint thus fails to plead "factual content that allows the court to draw the reasonable

21

inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). On this basis, the Complaint is dismissed as against Attorney General Grewal under Rule 12(b)(6) for failure to state a claim.

### b. Injunctive relief

Finally, I hold that the motion for preliminary injunctive relief is denied as moot. For the reasons stated in the preceding sections (IV.a.1 and IV.a.2), the plaintiffs do not state a viable injunctive claim, let alone establish likelihood of success.[14]

### V. Conclusion

For the reasons set forth above, I will grant defendants' motion to dismiss the complaint in its entirety as to Attorney General Grewal, and insofar as it seeks injunctive relief as to Judge Kessler. In addition, and in the alternative, I deny plaintiffs' motion for a preliminary injunction as moot. Because this is an initial dismissal, it is without prejudice to the submission of a properly supported motion to amend the complaint. An appropriate order follows.

Dated: September 28, 2018

**Kevin McNulty**
**United States District Judge**

---

[14] Plaintiffs who seek preliminary injunctive relief must establish (1) that they are likely to succeed on the merits; (2) that they are likely to suffer irreparable harm in the absence of preliminary injunctive relief; (3) that the balance of equities tips in their favor; and (4) that an injunction is in the public interest. *Ferring Pharm., Inc. v. Watson Pharm., Inc.*, 765 F.3d 205, 210 (3d Cir. 2014). The plaintiff bears the burden of showing that these four factors weigh in favor of granting the injunction. *Id.* (citing *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 192 (3d Cir. 1990)). A court will consider all four factors, but the first two are essential: A court may not grant injunctive relief, "regardless of what the equities seem to require," unless plaintiffs carry their burden of establishing *both* a likelihood of success and irreparable harm. *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 484 (3d Cir. 2000); *accord Hoxworth v. Blinder, Robinson & Co.*, 903 F.2d 186, 197 (3d Cir. 1990).