UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| PAUL ARGEN and SURENDER MALHAN,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD KESSLER and GURBIR S. GREWAL,<br><br>Defendants. | Civ. No. 18-963 (KM)(JBC)<br><br>OPINION |

## KEVIN MCNULTY, U.S.D.J.:

The plaintiffs, Paul Argen and Surender Malhan, seek declaratory relief under 42 U.S.C. § 1983 and the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201, regarding a June 2015 court order (hereinafter, "Gag Order") by the Honorable Donald Kessler of the Superior Court of New Jersey.[1] Judge Kessler issued that Gag Order in the course of a bitter divorce and child custody dispute between Malhan and his ex-wife, Alina Myronova. The order limits the ability of the parties to discuss publicly certain aspects of the custody dispute.

---

[1] For ease of reference, certain key items from the record will be abbreviated as follows:

| | | |
|---|---|---|
| "DE __" | = | Docket Entry in this case |
| "Def. Br." | = | Brief in Support of Motion to Dismiss Complaint by Judge Kessler (DE 30-1) |
| "Pl. Opp." | = | Plaintiffs' Opposition to Judge Kessler's Motion to Dismiss (DE 31) |
| "Def. Reply" | = | Reply Brief in Further Support of Motion to Dismiss (DE 32) |
| "MTD Op." | = | Opinion Dated September 28, 2018 (DE 26) (available as *Argen v. Kessler*, No. 18-cv-963, 2018 WL 4676046 (D.N.J. Sept. 28, 2018)) |

1

Plaintiffs have also named the Attorney General of the State of New Jersey, Gurbir Grewal, as a defendant.

As outlined in more detail elsewhere ("MTD Op.", DE 26), the parties do not seem to dispute at least that a family court may enter an order requiring confidentiality based on a proper showing as to the effect of public statements on the welfare of the children involved in the dispute. Judge Kessler entered what was intended to be a 30-day order based on the limited information before him. The order clearly contemplated that further evidence would be taken, and that it could be further tailored as necessary to its proper purpose of protecting the children. His attempts to retain a joint psychological report from a court expert were frustrated by the parties' inability to cooperate. He then ordered that each party submit its own psychological report, on the basis of which he would rule. That did not occur. (*See* MTD Op. at 4–6, DE 26).

Plaintiffs initially moved for temporary restraints and a preliminary injunction. I denied the request for temporary restraints and scheduled a hearing on the preliminary injunction, after which I reserved decision. Defendants then moved to dismiss the complaint. (DE 13). On April 6, 2018, I entered a procedural order that the two motions would be decided together. I also directed that "counsel shall report in writing on the progress being made to furnish psychological reports as ordered by Judge Kessler." (DE 16). In a certification dated April 18, 2018, counsel for plaintiffs stated that Malhan's custody expert had declared herself unqualified to provide a psychological report with respect to the effect of publicity on the children, and that Myronova's designated psychologist had not yet submitted a report. (DE 18). The Court has not received a further update on whether the parties have made any alternative arrangements to furnish a psychological report.

In a written opinion, I granted defendants' motion to dismiss the complaint in its entirety as to Attorney General Grewal, and also insofar as it sought injunctive relief against Judge Kessler. (MTD Op., DE 26; DE 27). Additionally, and in the alternative, I denied plaintiffs' motion for a preliminary

2

injunction. (MTD Op. at 18–21). This Opinion, which is supplemental to the earlier one, should be read in the context of that earlier Opinion.

Now before the Court is the state-court Judge's motion to dismiss what remains of the complaint for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).[2] (DE 30). His main assertion is that since the plaintiffs' only remaining claim is one for declaratory relief under the DJA, 28 U.S.C. § 2201, and the DJA alone cannot provide a basis for federal subject-matter jurisdiction, the complaint ought to be dismissed. As detailed more extensively below, I will deny defendant's motion to dismiss because the remainder of plaintiffs' claim under 42 U.S.C. § 1983 provides a sufficient basis for federal-question subject-matter jurisdiction.

Additionally, plaintiffs have brought a second motion for a preliminary injunction. (DE 35). Largely for the reasons stated in my Opinion denying plaintiffs' first motion for a preliminary injunction (MTD Op. at 18–21), that second motion is denied.

## I. Background
### a. Factual summary

I write for the parties and incorporate by reference the factual background found in the first motion to dismiss Opinion dated September 28, 2018 (MTD Op at 2–8; DE 27). For clarity, I note at the outset that Judge Kessler recused himself from the family court proceedings and was replaced by Judge David Katz. (MTD Op. at 6). As in the MTD Opinion, I find that Judge Katz's substitution does not alter the substance of the issues. (*Id.* at 6 n.5). References herein to Judge Kessler should be read, as appropriate, to include Judge Katz as his successor.

---

[2] Defendants do not explicitly cite any particular federal rule as the basis for their motion. (*See generally* DE 30, DE 32). Because the motion to dismiss is premised on a challenge to subject-matter jurisdiction, I treat it as one under Fed. R. Civ. P. 12(b)(1).

3

### b. Relevant procedural history

I incorporate by reference the procedural history related in the MTD Opinion. (MTD Op. at 2–7). In that Opinion, I granted defendants' motion to dismiss the complaint as to all claims against Attorney General Grewal and as to the claim for injunctive relief against Judge Kessler. Those dismissals were entered without prejudice to the submission of a properly supported motion for leave to amend the complaint within 30 days, *i.e.*, by October 29, 2018. (DE 26; DE 27). Because the plaintiffs have not filed a motion to amend the complaint, those dismissals have ripened into dismissals with prejudice.

On November 9, 2018, Judge Kessler filed a motion to dismiss the remainder of the complaint for lack of jurisdiction, the motion now before the Court. (DE 30). Additionally, on April 12, 2019, plaintiffs filed a second motion for injunctive relief, which is also before the Court. (DE 35).

## II. Standards of Review

Rule 12(b)(1) governs jurisdictional challenges to a complaint. These may be either facial or factual attacks. *See* 2 Moore's Federal Practice § 12.30[4] (3d ed. 2007); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). A facial challenge asserts that the complaint does not allege sufficient grounds to establish subject-matter jurisdiction. *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015); *Iwanowa v. Ford Motor Co.*, 67 F. Supp. 2d 424, 438 (D.N.J. 1999). A court considering such a facial challenge assumes that the allegations in the complaint are true, and may dismiss the complaint only if it nevertheless appears that the plaintiff will not be able to assert a colorable claim of subject-matter jurisdiction. *Iwanowa*, 67 F. Supp. 2d at 438; *Cardio–Med. Assoc., Ltd. v. Crozer–Chester Med. Ctr.*, 721 F.2d 68, 75 (3d Cir. 1983).

As to a facial jurisdictional attack, then, the Rule 12(b)(1) standard is similar to that for an ordinary motion to dismiss for failure to state a claim under Rule 12(b)(6). For purposes of a motion to dismiss, the facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in

favor of the plaintiff. *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014). Federal Rule of Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570.

### III. Analysis

#### a. Defendants' motion to dismiss

Defendants argue that the Declaratory Judgment Act ("DJA") does not support federal subject-matter jurisdiction if no other cognizable federal claims are pending. (*See* Def. Br.). Plaintiffs accept that premise, but offer three responses: (1) Since § 1983 provides a basis for federal subject-matter jurisdiction, the DJA is not the sole putative jurisdictional hook here; (2) defendants' motion is barred by Fed. R. Civ. P. 12(g)(2) because it was omitted from the prior motion to dismiss; and (3) defendant is judicially estopped from asserting that declaratory relief is unavailable because he argued the opposite position in the prior motion to dismiss. (*See generally* Pl. Opp.).

Issues (2) and (3), raising threshold bars to the motion, need not detain the Court.[3] I proceed to the substance of the motion, issue (1).

---

3   I disagree with plaintiffs' argument that defendants' motion is barred by Fed. R. Civ. P. 12(g)(2):

> *Limitation on Further Motions.* Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion.

Rule 12(g)(2) explicitly cross-references Rule 12(h)(3) as an exception to its general rule. Rule 12(h)(3) states that "[i]f the court determines *at any time* that it lacks subject-matter jurisdiction, the court must dismiss the action." (Emphasis added.) Defendant's motion is a challenge to subject-matter jurisdiction and therefore falls within that 12(h)(3) exception. More generally, of course, this court cannot proceed in the absence of subject matter jurisdiction, so "[t]he objection that a federal court lacks

5

The DJA provides that, in "a case of actual controversy" within its jurisdiction, a federal court may issue declaratory relief regarding the rights or legal relations of the parties. 28 U.S.C. § 2201. The DJA only "enlarge[s] the range of remedies available in the federal courts [and does] not extend their jurisdiction." *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671, 70 S.Ct. 876 (1950).[4] The U.S. Court of Appeals for the Third Circuit has held unequivocally that the DJA does not provide a standalone basis for federal subject-matter jurisdiction. *Allen v. DeBello*, 861 F.3d 433, 444, n.57 (3d Cir. 2017) ("The Declaratory Judgment Act does not. . . provide an independent basis for subject-matter jurisdiction; it merely defines a remedy.") (collecting cases). To state it differently, the DJA is not itself an independent cause of action sufficient to invoke the court's federal-question jurisdiction; the availability of relief under the DJA "presupposes the existence of a judicially remediable right." *Schilling v. Rogers*, 363 U.S. 666, 677, 80 S. Ct. 1288, 1296 (1960).

---

subject-matter jurisdiction . . . may be raised at any stage in the litigation." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 500, 126 S. Ct. 1235, 1236 (2006)).

Because in this section I have accepted plaintiffs' substantive argument, *see infra*, I need not reach their contention that the defendants are judicially estopped from asserting that declaratory relief is unavailable. There is something to the notion, however, that defendants' successful invocation of the statutory bar to injunctive relief where declaratory relief is available would thenceforth place the case on a declaratory track. *See* 42 U.S.C. § 1983 ("[I]n any [§ 1983] action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable."). *See also* n.6, *infra*; MTD Op. at 18-21.

4     "Prior to [the enactment of the Declaratory Judgment Act], a federal court would entertain a suit on a contract [for example] only if the plaintiff asked for an immediately enforceable remedy like money damages or an injunction, but such relief could only be given if the requisites of jurisdiction, in the sense of a federal right or diversity, provided foundation for resort to the federal courts. The Declaratory Judgment Act allowed relief to be given by way of recognizing the plaintiff's right even though no immediate enforcement of it was asked. But the requirements of jurisdiction—the limited subject matters which alone Congress had authorized the District Courts to adjudicate—were not impliedly repealed or modified." *Skelly Oil Co*, 339 U.S. 667, 671-72.

The underlying "judicially remediable right" here can only be the plaintiffs' claim under 42 U.S.C. § 1983. Thus the viability of the declaratory judgment claim depends on whether any portion of the plaintiffs' § 1983 claim remains intact in the wake of the earlier MTD Opinion. If it does, then the defendant's argument fails because the DJA would not be the sole federal jurisdictional hook; a § 1983 claim would support federal-question jurisdiction under 28 U.S.C. §§ 1331 and 1343. *See Suarez v. City of Bayonne*, 566 F. App'x 181, 184 (3d Cir. 2014) (acknowledging that the District Court had federal-question jurisdiction pursuant to 28 U.S.C. § 1331 for § 1983 claims); *Khodara Envtl. II v. Chest Twp.*, No. 02-cv-96, 2007 WL 4375929, at *13 (W.D. Pa. Nov. 30, 2007).

The plaintiffs are correct in saying that one component of their § 1983 claim is still pending. The earlier dismissal did not rule either way on whether the complaint alleged an underlying constitutional violation; it rested on § 1983's statutory limitation on the availability of injunctive relief. *Argen v. Kessler*, No. 18-cv-963, 2018 WL 4676046, at *11 (D.N.J. Sept. 28, 2018), MTD Op. at 21 ("The complaint is. . . dismissed insofar as it seeks injunctive relief against Judge Kessler. Defendants' motion does not, however, address the claim for declaratory relief, *which remains*.") (emphasis added). By "claim for declaratory relief," I necessarily meant "*§ 1983* claim for declaratory relief"; there is no such thing as a claim for declaratory relief untethered to some underlying cause of action. Because there remains an undismissed portion of the § 1983 claim, federal-question jurisdiction is properly asserted under 28 U.S.C. §§ 1331 and 1343.

I next consider another asserted limitation on § 1983 declaratory relief that arises from the nature of the judicial function. A litigant does not stand in an adverse, case-or-controversy relation to a neutral state judge who is merely ruling on the state-law issues in a case. That is so even if those rulings are unfavorable to that particular litigant and favorable to his or her opponent; the remedy for error, if any, is an appeal, not a civil action against the judge. Thus

7

in a case challenging the constitutionality of a statute, "a judge who acts as a *neutral and impartial arbiter* of a statute is not a proper defendant to a Section 1983 suit." *Allen*, 861 F.3d 433, 440 (emphasis added). However, a plaintiff can bring a claim for declaratory relief under § 1983 against a judge when that judge acts "as an *enforcer or administrator* of a statute." *Id.* (emphasis added) (citing *In re Justices of Supreme Court of Puerto Rico*, 695 F.2d 17, 18 (1st Cir. 1982) (hereinafter, "*In re Justices*")).

*Nichols v. Sivilli*, No. 14-cv-3821 (WJM), 2014 WL 7332020, at *3 (D.N.J. Dec. 19, 2014), was a nearly identical case brought by Malhan and a different journalist (Paul Nichols) challenging the constitutionality of an earlier gag order issued by one of the former judges (Judge Sivilli) assigned to Malhan's state court custody proceedings. There, the district court, per Judge Martini, distinguished *In re Justices* and permitted a declaratory judgment claim to stand. Even setting aside the opinion's persuasive force, the demands of consistency (if not precisely the law-of-the-case doctrine) weigh in favor of my adopting Judge Martini's reasoning, and I do.

Judge Martini reasoned that there was a justiciable controversy because Judge Sivilli was acting as an "enforcer or administrator" of her (prior) gag order, rather than as an "arbiter" of state law issues:

> The Court finds that the present case is distinguishable from *In re Justices* and concludes that a case or controversy exists between Nichols and Judge Sivilli. First, the *In re Justices* Court partially rested its conclusion on the fact that the Justices in that case were not responsible for enforcing the statute that was being challenged. In contrast, New Jersey law empowers Judge Sivilli to enforce the Gag Order should the parties fail to comply with its terms. *See* N.J. R. 1:10; *Board of Educ., Tp. Of Middletown tp. Educ. Ass'n*, 352 N.J. Super. 501, 509–10, 800 A.2d 286 (N.J. Super. Ct. Ch. Div.2001) ("The power of the court to enforce an order has neither been put in question ... nor is it questionable."). Because Judge Sivilli is responsible for enforcing her Order, it cannot be said that her relationship to the Order is merely adjudicative. *See In re Justices*, 695 F.2d at 22.

8

It is also significant that Judge Sivilli drafted the terms of the Gag Order. As *In re Justices* and its progeny point out, judges will seldom have a personal stake in a constitutional challenge to a statute because they rarely have any role in the enactment of the statute. The Gag Order in this case, however, is a product of Judge Sivilli's creation. Judge Sivilli drafted the terms of the Gag Order and entered the Order so as to give it legal effect. (*See* SAC, Ex. A). In fact, Judge Sivilli exercised her plenary power over the Gag Order by modifying its terms one month after she initially entered it. (*See* SAC at ¶ 20). These factors all support the conclusion that Judge Sivilli has adverse legal interests to a party who seeks to challenge the Gag Order. Therefore, Nichols' suit against Judge Sivilli meets Article III's case or controversy requirement.

To be sure, Judge Katz might be deemed a nominal or "relief" defendant, as opposed to a legal adversary in the usual sense. Nevertheless, as Judge Martini noted, "federal courts bound by Article III's case or controversy requirement routinely hear challenges to gag orders that name judges as defendants." *Nichols*, 2014 WL 7332020, at *4 n.3 (collecting cases). That analysis is instructive in explaining why declaratory relief is available under § 1983 here. In this context, Judge Kessler (or Katz) is more accurately deemed "an enforcer or administrator" of his own Gag Order rather than an "arbiter" of state-law claims as such. *See Allen*, 861 F.3d 433, 440. This Court therefore does not lack jurisdiction to hear a claim for declaratory relief.

For these reasons and the ones outlined in the MTD Opinion, the § 1983 claim, to the extent it seeks declaratory relief, will not be dismissed. Issues concerning whether and to what extent such relief should be awarded, of course, remain to be determined. The motion to dismiss the complaint on these jurisdictional grounds, however, is denied.

### b. Plaintiffs' motion for injunctive relief

On April 12, 2019, plaintiffs filed a second motion for injunctive relief. (DE 35). On April 15, 2019, defendants filed a letter in reply (DE 36), particularly noting that the plaintiffs' legal arguments were similar to those

made in support of their first, denied request for injunctive relief (DE 4; DE 10).[5]

The plaintiffs' second motion for injunctive relief is indeed largely duplicative of their first motion for injunctive relief. Moreover, plaintiffs' moving papers articulate no persuasive reason that the Court should abandon the analysis in its earlier MTD Opinion and Order. Now as before, for example, I have found that declaratory relief is not unavailable; it follows that injunctive relief is statutorily barred. (See, e.g., MTD Op. at 18-21 ("[T]he only way Malhan could obtain injunctive relief against a state court Judge for issuing (or not modifying) the Gag Order would be to demonstrate that the Judge violated a prior declaratory judgment or that declaratory relief is unavailable.") (citing 42 U.S.C. § 1983; *Mikhail v. Khan*, 572 F. App'x 68, 71 (3d Cir. 2014)).[6]

The plaintiffs do not meaningfully grapple with the Court's prior ruling. Instead, they again press the merits of their First Amendment claim, assert that the preliminary injunction factors weigh in their favor, and argue that Malhan has not violated the Gag Order by posting online about Judge Katz and the custody proceedings. (See DE 35-1). These updated, but essentially recycled, arguments require no further discussion.[7]

---

[5] In that connection, the defendants incorporate by reference their briefs in opposition to the first injunction motion. (DE 36).

[6] To be fair, this seemingly repetitive application for injunctive relief may merely have served a protective function. My prior ruling denying an injunction rested, in part, on the availability of declaratory relief. See 42 U.S.C. § 1983 ("[I]n any [§ 1983] action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable."). The current motion to dismiss, *supra*, attempts to exploit that ruling, while separately asserting that declaratory relief is *not* available—a heads-I-win, tails-you-lose proposition, possibly for both sides. I here reaffirm my earlier ruling that a declaratory judgment, whether or not ultimately granted, is at least generically available as a form of relief.

[7] In addition, I remain skeptical as to the equities, as well as any claim of irreparable harm, because the state court's attempts to address any claimed overbreadth in the Gag Order have been frustrated by the parties' noncooperation with the court expert and seeming inability or unwillingness to supply their own. (See MTD Op. at 3–7).

Consequently, plaintiffs' motion for injunctive relief is denied for the same reasons articulated previously. (MTD Opinion at 18–21).

## IV. Conclusion

For the reasons set forth above, I will deny defendants' motion to dismiss what remains of the complaint—*i.e.*, a § 1983 claim seeking declaratory relief—following my earlier MTD ruling. I will also deny plaintiffs' motion for injunctive relief. An appropriate order follows.

Dated: May 10, 2019

Kevin McNulty
United States District Judge

---

So the question is not really whether the state judge's gag order can ultimately be justified by a showing of danger to the welfare to the children. It is whether the state judge could enter what was intended to be a 30-day order based on the information before him, require psychological evidence to inform his opinion as to how the order should be tailored, and leave that order in place until such evidence is forthcoming.

It now appears that in an internet posting, Malhan has now called Judge Katz a "child predator," insinuated that the Judge is a "terrorist," and stated that the Judge "kidnapped [Malhan's] children." *See* DE 35-1 at 2, 14–15; DE 35-3 at 17. In their brief, plaintiffs request that the requested injunctive relief extend to an order prohibiting Judge Katz from punishing Malhan for this posting. DE 35-1 at 16. It does not appear, however, that there have been any judicial repercussions to date. Even if injunctive relief were available, I would not grant it on the speculative basis of anticipated rulings. This Court, moreover, is not going to assume ongoing supervision of proceedings in a state court of coordinate jurisdiction.